UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYAL & SUN ALLIANCE INSURANCE PLC,<br><br>Plaintiff,<br><br>v.<br><br>CASTOR TRANSPORT, LLC, *ET AL.*,<br><br>Defendants. | Case No.  13-cv-01811-BAS(DHB)<br><br>**ORDER GRANTING DEFENDANT TRANSPORTES CASTORES DE BAJA CALIFORNIA, S.A. DE C.V.'S MOTION TO DISMISS**<br><br>(ECF No. 59) |

John Deere Water, Inc. ("John Deere") contracted with Defendants Transportes Castores de Baja S.A. de C.V. ("Castores") and Castor Transport LLC ("Castor") (collectively referred to as "Defendants") for transportation of water irrigation equipment from the United States to Mexico.  The first shipment, which left San Marcos, California, was lost in-transit in an accident that occurred in Mexico on August 7, 2011.  The second shipment, which left San Diego, California, was lost in-transit in an accident that occurred in Mexico on April 11, 2012.  Plaintiff Royal & Sun Alliance Insurance PLC ("Plaintiff" or "Royal Sun") alleges it has paid John Deere for the loss of the cargo and seeks, as a subrogee, reimbursement from Defendants.

Castores now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) arguing lack of personal jurisdiction and forum non conveniens. The Court held an evidentiary hearing on the motion on February 9, 2016. For the reasons set forth below, Castores' Motion to Dismiss is **GRANTED** (ECF No. 59).

I. BACKGROUND

Castores is a foreign corporation incorporated under the federal laws of Mexico. (ECF No. 57 ("FAC") at ¶ 3; ECF No. 59-1 ("Sesma Decl.") at ¶ 5.) Its registered office is in Leon, Guanajuato, Mexico. (Sesma Decl. at ¶ 5.) Castores does not have, nor has it ever had, employees or property in California. (*Id*. at ¶ 10.) Castores is not registered to do business in California, nor does it have any agent for service of process in California. (*Id*.)[1]

There are questions of fact with respect to the relationship between Castores and Castor. Castores claims it has a "symbiotic business relationship" with Castor, whereby Castor provides transport in the United States to the consignee, who arranges for the shipment to pass customs, after which Castores provides transport in Mexico. (*Id*. at ¶ 8.) Despite the similarity of names, Castores claims Defendants have no ownership or financial interest in each other and are completely separate companies. (*Id*. at ¶ 9.) Plaintiff has presented no evidence to the contrary.

Castores claims it has no offices or physical presence in the United States or California. (*Id*.) However, on its web site it lists a San Diego address on Marconi Drive. (*Id*. at ¶ 11.) Castores claims this office address on its web site belongs to Castor and was only used by Castores "for the convenience of potential customers." (*Id*.) Plaintiff has presented no evidence to the contrary.

Castores claims it has never advertised or marketed in California, nor has it ever conducted business in California. (*Id*. at ¶ 10.) However, on its website, in

---

[1] Plaintiff originally attempted to move for a default judgment against Castores when it served Castor. When that entry of default was set aside, Castores was served with the summons and complaint in Leon, Guanajuato, Mexico.

Spanish, it says: "Today, with more than 34 years of experience, the business has more than 50 branches, provides service in all of the national territory and the west coast of the United States, and has consolidated as the leading terrestrial transportation business in Mexico." (*Id*. at ¶ 11.) Plaintiff has presented no evidence that Castores ever advertised, marketed, or conducted business in California.

There are questions of fact with respect to the contract negotiations. John Deere claims it contracted with both Castores and Castor to transport irrigation equipment from the San Diego area to Mexico. (ECF No. 62-4 ("Menconi Decl.") at ¶¶ 6, 7.) When employees of John Deere were negotiating with Castores, they communicated with an individual in Mexico who used a Castores email address. (ECF No. 62-8 ("Cammarano Decl.") at ¶¶ 6, 7.) The Bills of Lading for the shipment list Castores as the shipper, and John Deere paid Castores for these trips by delivering a check made out to Castores in U.S. Dollars to the Marconi Drive, San Diego address. (*Id*. at ¶¶ 5, 9, Exhs. 2, 5.) For both shipments, the cargo was loaded aboard Castor's trailers at John Deere locations in the San Diego area. (Menconi Decl. at ¶ 8.)

Castores, however, claims that the negotiations with Castores were all done with Castores in Mexico and that the agreement was that Castor would transport the irrigation equipment from John Deere to the border, and Castores would transport the equipment from the border, solely in Mexico. (Sesma Decl. at ¶¶ 17(a)(1)-(3); 17(b)(2)-(3); 17(c)(2)-(3).)

The first shipment at issue was destined for Jalisco, Mexico and was lost in a truck accident in Mexico on August 7, 2011. (FAC at ¶¶ 6, 7; ECF No. 59-2 at Exh. 3.) The second shipment was destined for Amozoc, Puebla, Mexico and was lost in a truck accident in Mexico on April 12, 2012. (*Id*. at ¶¶ 9, 10; Sesma Decl. at ¶¶ 16, 18; ECF No. 59-2 at Exh. 6.) Castores does not dispute that it was the carrier of the two John Deere shipments in Mexico, and that truck accidents occurred while it was transporting the shipments in Mexico. (Sesma Decl. at ¶ 21.) Rather, in part, it

asserts: (1) John Deere was at fault for the accident through its negligent loading of the freight in San Diego and San Marcos, California; and (2) John Deere recovered its merchandise so it is not clear whether it suffered any damages at all. (ECF No. 31-2 at p. 7.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In ruling on the motion, the "court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Data Disc, Inc. v. Systems Tech. Assocs. Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When such an evidentiary hearing is set, the "plaintiff must establish the jurisdictional facts by a preponderance of evidence, just as he would have to do at trial." *Id*. However, if no such hearing is set, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Unocal Corp.*, 248 F.3d at 922 (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court

1  sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). Under California's long-arm statute, California state courts may exercise personal jurisdiction over defendants "to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent Corp.*, 11 F.3d at 1484; *see also Daimler AG*, 134 S. Ct. at 753 (citing Cal. Civ. Proc. Code § 410.10). Therefore, we need only determine whether personal jurisdiction in this case would meet the requirements of federal due process. *Id.* at 1484-85; *see also Daimler AG*, 134 S. Ct. at 753.

There are two types of personal jurisdiction: general and specific. *See Daimler AG*, 134 S. Ct. at 754-55. General jurisdiction "enables a court to hear cases unrelated to the defendant's forum activities[.]" *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court. *See Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "Whether dealing with specific or general jurisdiction, the touchstone remains 'purposeful availment' . . . [to] ensure[] that 'a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (other citations omitted).

### III.  DISCUSSION

Castores contends this Court has neither general nor specific jurisdiction over it. Royal Sun responds that Castores' contacts with California are sufficient to confer specific jurisdiction. The Court set the issue for an evidentiary hearing and invited Royal Sun to present evidence to meet its burden of proving personal jurisdiction over Castores. Royal Sun declined to do so.

Instead, Royal Sun relied on its previously submitted declarations from the following: Dennis A. Cammarano, counsel for Royal Sun; Jackson Hendrick, a

retained expert who has investigated the crashes and non-delivery; and Jeff Menconi, manager of supply management at John Deere. (ECF Nos. 62-4, 62-6, 62-8.) Royal Sun also relied on the following which it previously submitted: interrogatories submitted by Castor (ECF No. 62-9); the check John Deere made out to Castores for the shipment (ECF No. 62-10); emails exchanged between Jose Luis Sanchez and John Deere (ECF No. 62-11); copies of the website for Castores (ECF No. 62-12); and an invoice from Castores for the shipments (ECF No. 62-13).

In its moving papers, Castores submitted the Declaration of Mario Cesar Guillen Sesma, Secretary of the Counsel and a member of the Board of Directors of Castores. (*See* Sesma Decl. at ¶¶ 1, 2.)[2] Castores also submitted exhibits including both the United States and Mexico Bills of Lading for both shipments (ECF No. 59-2 at Exhs. 1, 2, 4, 5) as well as two Mexican police reports documenting the two truck accidents (*Id*. at Exhs. 3, 6).

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those

---

[2] Royal Sun objects to parts of the declaration of Mr. Cesma as containing hearsay, legal conclusions, or hypotheticals. (ECF No. 62-2.) The Court **SUSTAINS** the objections to all objected-to parts except for objection # 3, which states that the Marconi Drive address is the place of business of Castor Transport. This does not appear to be a hearsay statement, but rather an observation by an individual who has worked for Castores for 35 years and maintained an on-going relationship with Castor Transport.

activities.'" *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (alterations in original) (quoting *Int'l Shoe*, 326 U.S. at 318). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 134 S. Ct. at 760 (alterations in original) (internal quotations omitted). "These bases afford plaintiff recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

In assessing whether a non-resident defendant's contacts with a state are sufficiently substantial, continuous, and systematic, courts examine the "[l]ongevity, continuity, volume, [and] economic impact" of those contacts, as well as the defendant's "physical presence . . . and integration into the state's regulatory or economic markets." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011); *see also Bancroft*, 223 F.3d at 1086. Courts "focus upon the 'economic reality' of the defendants' activities rather than a mechanical checklist." *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984)). A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Int'l Shoe*, 326 U.S. at 318; *see also Goodyear*, 131 S. Ct. at 2856. "Although the placement of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction," the Supreme Court has explained, "such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.'" *Daimler AG*, 134 S. Ct. at 757 (quoting *Goodyear*, 131 S. Ct. at 2857).

Under the circumstances of this case, *Bancroft* and *Gator.Com* are instructive. In *Bancroft*, the Ninth Circuit affirmed the lower court's finding that general jurisdiction was lacking because the defendant's "contacts [did] not qualify as either substantial or continuous and systematic." *Bancroft*, 223 F.3d at 1086. The court identified numerous facts that supported its determination: the defendant was not

registered or licensed to do business in California; it did not pay taxes or maintain bank accounts in California; the defendant did not target print, television, or radio advertising toward California; and its website was "passive," lacking the capability of allowing consumers to purchase products. *Id*. The Ninth Circuit also recognized that the defendant's license agreements with two television networks and a "handful of California vendors" constituted "doing business with California, but [did] not constitute doing business in California." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)).

In contrast, *Gator.Com* presented a "close question" with respect to the existence of general jurisdiction. *Gator.Com*, 341 F.3d at 1078. Though the defendant in *Gator.Com* lacked the traditional bases for general jurisdiction, the Ninth Circuit nonetheless found that general jurisdiction existed in light of the defendant's "extensive marketing and sales in California, its extensive contacts with California vendors, and the fact that . . . its website is clearly and deliberately structured to operate as a sophisticated virtual store in California." *Id*. at 1078. Despite the fact that the defendant did not pay taxes or maintain an agent for the service of process in California, and its California sales amounted to 6 percent of the company's revenue, the factors favoring general jurisdiction included: selling "millions of dollars worth of products" in California; soliciting California residents directly through email; purchasing products from "numerous California vendors"; maintaining a "highly interactive" website through which California consumers made purchases and communicated with sales representatives; and conducting "national print and broadcasting marketing efforts" that encompassed California. *Id*. at 1074, 1078.

Castores is neither incorporated in, nor registered to do business in, California. Its principal place of business appears to be Mexico not California. No evidence has been presented that addresses Castores' business volume in California, economic impact in California, or any solicitation of business from California residents beyond

a passive website. Castores does not appear to have a physical presence in California, such as owning property, paying taxes, or maintaining bank accounts. The fact that it uses a United States business address for the convenience of its customers is simply insufficient to establish a substantial, continuous or systematic presence in California. Accordingly, the Court finds Plaintiff has failed to establish general jurisdiction.

### B. Specific Jurisdiction

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard*, 65 F.3d at 1498. Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (citing *Burger King*, 471 U.S. at 476-78). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (citation omitted).

Furthermore, "[s]pecific personal jurisdiction requires a showing of forum-related activities of the defendant that are related to the claim asserted." *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 921 (C.D. Cal. 2015) (citing *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993)). Unlike general jurisdiction, specific jurisdiction is "confined to adjudication of issues deriving from, or

connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks omitted).

An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident. *See Burger King*, 471 U.S. at 478; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) ("[T]he existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident."). "Rather, there must be actions by the defendant himself that create a substantial connection with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks, emphasis and citation omitted). Merely, "random, fortuitous, or attenuated" contacts are not sufficient. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).

When the exercise of personal jurisdiction over a defendant is based on the execution or performance of a contract, the court must use "a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and citation omitted); *see also Fred Martin Motor Co.*, 374 F.3d at 802 ("A purposeful availment analysis is most often used in suits sounding in contract."). Accordingly, to determine whether a party to a contract has purposefully established the requisite minimum contacts with the forum, a court should look at four factors: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract: and (4) the parties' actual course of dealing. *Burger King*, 471 U.S. at 479. More specifically, "[t]o have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

Plaintiff has failed to meet its burden to show "purposeful availment" in this case. Plaintiff argues there is purposeful availment because Castores: (1) advertises that it offers services in the United States; (2) contracted with John Deere to pick up and deliver cargo in Mexico; and (3) admits a symbiotic business relationship with Castor, a California company.

First, the fact that Castores advertised, solicited, or transacted business, unrelated to this particular business dispute, is irrelevant to the inquiry of specific jurisdiction. Specific jurisdiction turns on whether a defendant's forum-related activities gave rise to the causes of action at issue, not whether the defendant has generally participated in forum-related activities. *See Carpenter*, 101 F. Supp. 3d at 921.

Second, Plaintiff fails to present evidence as to how this contract came about. Plaintiff claims John Deere contracted with both Castor and Castores to transport goods. Who contacted whom and how is noticeably absent. The only evidence which has been presented is that John Deere in California apparently communicated via email with Castores in Mexico. At some point an agreement was reached with both companies: Castor to transport in the United States and Castores to transport in Mexico. This would support Castores' position that John Deere contracted with Castores in Mexico to transport goods in Mexico. The sole piece of evidence supporting Plaintiff's argument of "purposeful availment" is that John Deere wrote a check to Castores and delivered that check to an office in California that Castores represented on its web site was a branch office.

However, the contract contemplated that Castor (the United States company) would pick up the two loads from John Deere in California and that Castores (the Mexico company) would pick up the load in Tijuana and transport it within Mexico. The contract anticipates no activity by Castores in California. This proved to be the case: Castor transported in California; Castores transported in Mexico. Merely entering into contracts with a California company is insufficient to establish specific

jurisdiction. *See Boschetto*, 539 F.3d at 1017 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum.") Plaintiff has therefore failed to meet its burden to show the first two prongs of specific jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish this Court has personal jurisdiction over Castores, a Mexican company. Accordingly, Castores' Motion to Dismiss (ECF No. 59) is **GRANTED**.[3]

Furthermore, as ordered in the Court's December 21, 2015 Order vacating all dates in the most recent scheduling order, "[w]ithin five (5) days of the issuance of [this Order], the parties shall file a joint motion proposing new dates." (ECF No. 65.)

**IT IS SO ORDERED.**

DATED: February 17, 2016

Hon. Cynthia Bashant
United States District Judge

---

[3] Because the Court finds that it does not have personal jurisdiction, it does not address Castores' forum non conveniens argument.